# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD CLARK, on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC. D/B/A CAREFIRST BLUECROSS BLUESHIELD, EMERGENCY PHYSICIANS ASSOCIATES, and DOES 1-10,<br><br>Defendants. | CASE NO. 10-CV-333-BEN (BLM)<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENDANT'S MOTION TO STRIKE<br><br>[Docket No. 10] |

## INTRODUCTION

Before the Court is Defendant Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross BlueShield's ("CareFirst's") Motion to Dismiss both Plaintiff Richard Clark's federal cause of action under ERISA § 502(a)(1)(B) and the state law claim under the Unfair Competition Law, California Business & Professions Code § 17200, et. seq. ("UCL") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. CareFirst additionally moves

1 to strike Plaintiff's purported class definition under Federal Rule of Civil Procedure 12(f).  On
2 April 5, 2010, CareFirst filed this Motion to Dismiss and Motion to Strike.  (Docket No. 10.)
3 Plaintiff filed an opposition and CareFirst filed a reply.  (Docket No. 14, 15.)  For the following
4 reasons, CareFirst's Motion to Dismiss is **DENIED** as to both the ERISA claim and the UCL
5 claim.  CareFirst's Motion to Strike is **GRANTED**.

## BACKGROUND

This case arises from an alleged denial of benefits pursuant to ERISA § 502(a)(1)(B) and alleged unlawful "balance billing" under California's Unfair Competition Law.  (Docket No. 1.)

On August 27, 2007, Plaintiff enrolled himself and his dependant son in a health benefit plan, Group No. 4F51, (the "Plan") through his employer Targus Information Corporation. (Compl. ¶¶ 7, 9, 13, 22.)  CareFirst administered the Plan, which is an employee benefit plan as defined under ERISA.  (Compl. ¶¶ 4, 9, 19.)  Under the Plan, Plaintiff Richard Clark is a "subscriber" or "participant," and his son was a "beneficiary" of the Plan at the time the emergency occurred.  (Compl. ¶ 23.)

The Plan's Certificate of Coverage provides a "Description of Covered Services."  (Compl. ¶¶ 23-24.)  Under the Plan, there are two levels of benefits for services: In-Network and Out-of-Network.  (Compl. ¶ 23.)  In-Network benefits apply when services are rendered by a Preferred Provider, and in other circumstances as defined in the Plan such as when emergency care services are provided to a subscriber.  (Compl. ¶ 24.)  The Plan provides as follows for emergency care: "In any case in which covered services are provided to you by and [sic] Health Care Facility or Health Care Practitioner (**whether or not a Preferred Provider**) . . ., benefits will be available for such services to the same extent as if such Heath Care Facility or Health Care Practitioner were a Preferred Provider."  (Compl. quoting Certificate of Coverage, § 1.2, Attachment A) (emphasis added in Complaint.).  The Plan states that the subscriber "may be responsible for amounts in excess of the Plan Allowance for these [emergency] services."  (Compl. ¶ 24.)

Attachment B to the Certificate of Coverage delineates the "Schedule of Benefits" that provide the appropriate "Plan allowances" for emergency care.  (Compl. ¶ 25.)  In-Network "Emergency Room Treatment" is covered at "100% of the Allowed Benefit, minus a Member-

1  Copayment of $50 per visit." (Compl. ¶ 27.) For Preferred Providers, "Allowed Benefit" is
2  defined as the lesser of "the actual charge" or "the amount CareFirst allows for the service in
3  effect on the date the service is rendered." (Compl. ¶ 28.)
4       On September 21, 2008, Plaintiff's son visited his local emergency room at O'Connor
5  Hospital in San Jose, California for treatment of a broken hand. (Compl. ¶ 29.) On October 16,
6  2008, CareFirst received claims for benefits under the Plan pertaining to hospital room facility
7  charges and physician charges incurred by Emergency Physicians Associates. (Compl. ¶ 30.) The
8  combined fees totaled $2,815.00—$1,722 for the hospital room charge and $1,093 for services
9  provided by Emergency Physicians Associates. (Compl. ¶ 31.) CareFirst paid for the emergency
10 room's facility charge at 100%, less the $50 co-payment, in accordance with the Plan. (Compl. ¶
11 32.) Regarding the physician charges, CareFirst paid $246.96 of the remaining $1,093 balance for
12 the services rendered by Emergency Physicians Associates. (Compl. ¶ 33.) CareFirst sent
13 Plaintiff an Explanation of Benefits ("EOB"), explaining the charges were "over [the] plan
14 allowance" for the service, stating: "Payments included with this EOB are reimbursement for
15 covered health services rendered by a non-participating provider [under the terms of the Plan]. It
16 is the member's responsibility to pay the provider for these services." (Compl. ¶ 34.)
17 Subsequently, Plaintiff was billed by Emergency Physicians Associates for the $846.04 remaining
18 balance. (Compl. ¶ 35.)
19      On or about January 30, 2009, CareFirst received Plaintiff's written appeal for the
20 treatment of the original claim and reimbursement for the physician services. (Compl. ¶ 36.) By
21 letter dated June 4, 2009, CareFirst denied Plaintiff's appeal because "the claim processed
22 correctly according to the terms of your contract emergency services benefit, at 100% of the plan
23 allowance." (Compl. ¶ 37, 38.) In August of 2009, CareFirst received a second letter from
24 Plaintiff appealing the denial of benefits determination. CareFirst has not responded to this second
25 appeal. (Compl. ¶ 39, 40.)
26      On February 10, 2010, Plaintiff filed the Complaint. The Complaint alleges two causes of
27 action: (1) recovery, enforcement and clarification of benefits under ERISA § 502(a)(1)(B); and
28 (2) unlawful "balance billing" under California's UCL, including a violation of the Knox-Keane

Health Care Service Plan Act of 1975, Health & Safety Code §§ 1340, et seq., ("Knox-Keane Act"). (Docket No. 1.)

## DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), dismissal for failure to state a claim can be based on either: (1) a lack of a cognizable legal theory; or (2) the absence of sufficient facts to raise a reasonable expectation that discovery will reveal evidence of the cognizable legal theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-557 (2007); Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, Plaintiff's allegations must be taken as true and all reasonable inferences from the facts alleged must be drawn in Plaintiff's favor. *Id.* at 56; *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'"). In the Supreme Court's decision in *Ashcroft v. Iqbal*, the Court determined a court may disregard mere legal conclusions and look, instead, to whether factual allegations are specific enough to draw a reasonable inference that the defendant is liable for the misconduct alleged. 129 S.Ct. 1937, 1949-1950 (2009). If a motion to dismiss is granted and leave to amend is requested by the non-moving party, courts will generally grant leave to amend the complaint unless it is clear the complaint's deficiencies cannot be cured by amendment. *See Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995).

**A. ERISA Claim**

Plaintiff asserts a claim for recovery and enforcement of benefits and for clarification of rights to future benefits under the Plan pursuant to ERISA § 502(a)(1)(B). The pertinent ERISA section states: "A civil action may be brought by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).

Here, Plaintiff seeks the difference between the amount CareFirst paid to Emergency

Physicians Associates and the amount CareFirst allegedly should have paid to Emergency Physicians Associates for the emergency services under the Plan. (Compl. ¶¶ 18(c), 46.) Plaintiff alleges CareFirst erred by failing to calculate the level of benefit based on the In-Network component of the Plan. (Pl.'s Opp'n at 8:7-9.) Aside from claiming benefits due under the Plan, Plaintiff also seeks to clarify his future rights under the terms of the Plan. (Compl. ¶ 47.)

CareFirst asserts that Plaintiff's allegations fail to state a claim under ERISA because CareFirst "strictly adhered to the Plan terms." (Def.'s Reply 4:17-18.) In the EOB, CareFirst stated that Emergency Physicians Associates' charges were "over our plan allowance," further explaining, "[p]ayments included with this EOB are reimbursement for covered health services rendered by a non-participating provider [under the terms of the Plan]. It is the member's responsibility to pay the provider for these services." (Compl. ¶ 34.) CareFirst also asserts that Plaintiff's assumption that coverage under services by a Preferred Provider is greater than coverage under services rendered by a Non-Participating Provider is faulty. (Def.'s Reply 3:20-22.)

Put simply, the parties dispute whether the terms of the Plan were preformed. According to CareFirst, since its obligations under the terms of the Plan were fully performed, there was no harm done to the Plaintiff under the ERISA Plan; therefore, the claim should be dismissed. (Def.'s Reply 4:17-23.) However, this fact-based argument challenging an allegedly unsupported claim is not appropriate for a motion to dismiss, and may be more proper for a summary judgment motion after discovery concludes. *See* Fed. R. Civ. P. 56(c); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159 (1970) (Unlike Rule 12(b)(6) where allegations within the complaint are accepted as true, "when a motion for summary judgment is made . . . [a party] may not rest upon the mere allegations . . . but his response . . . must set forth specific facts showing that there is a genuine issue for trial.").

The purpose of a motion to dismiss is to determine whether the Plaintiff has appropriately alleged facts, taken as true by the Court, that state a claim for benefits due pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B). *See Twombly*, 550 U.S. at 556-557. Here, Plaintiff has alleged facts sufficient to support his claim under ERISA. Specifically, the Plaintiff alleges, "CareFirst paid as

1  emergency room benefits under the Plan an amount other than 100% of the allowed benefit as
2  called for by the Plan . . . ." (Compl. ¶ 46.) These facts, taken as true, would entitle the Plaintiff to
3  relief under ERISA. Furthermore, considering the confusion, or misapprehension, as to the Plan's
4  terms and how they apply to this emergency situation, Plaintiff adequately states a claim under
5  ERISA by seeking clarification of rights to future benefits under the Plan's terms. For these
6  reasons, CareFirst's Motion to Dismiss the ERISA claim is **DENIED**.
7  ///

## B. ERISA Preemption

CareFirst moves to dismiss Plaintiff's state law claim as preempted under ERISA's preemption provisions. Two sections of ERISA, § 514(a) and § 502(a), operate to preempt certain claims in order to implement a comprehensive and uniform regulatory regime for employee medical benefit plans. *See* 29 U.S.C. § 1144(a) (§ 514(a)); 29 U.S.C. § 1132(a) (502(a)); *Davila*, 542 U.S. at 208 ("ERISA includes expansive preemption provisions . . . , which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'"). A claim is preempted if the cause of action "relates to" to the ERISA plan unless the cause of action regulates insurance, banking or securities. *See* 29 U.S.C. § 1144(a), *et. seq.* Even still, the defendant's conduct must create an independent legal duty triggering remedies separate from those that could be brought under ERISA's comprehensive remedial structure. *See* 29 U.S.C. § 1132(a); *Davila*, 542 U.S. at 210.

### 1. § 514(a) Preemption

The blanket preemption provision, § 514(a), states ". . . the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). In analyzing preemption issues under § 514(a), a state law claim "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Sarkisyan v. CIGNA Healthcare of Cal.*, 613 F. Supp. 2d 1199, 1204 (C.D. Cal. 2009). But § 514(b), ERISA's savings clause, provides that "law[s] . . . which regulate[] insurance, banking, or securities" are saved from ERISA preemption. § 1144(b)(2)(A); *see also Davila*, 542 U.S. at 217 (explaining "[the savings clause] must be interpreted in light of the congressional intent to

1 create an exclusive federal remedy under ERISA § 502(a).").

2 For a state law to be considered a "law which regulates insurance," that law must be 3 "specifically directed toward entities engaged in insurance" and it must "substantially affect the 4 risk pooling arrangement between the insurer and insured . . . ." *Kentucky Ass'n of Health Plans,* 5 *Inc. v. Miller*, 538 U.S. 329, 342 (2003); *see Cohen v. Health Net of Cal., Inc.*, 29 Cal. Rptr. 3d 46 6 (*previously published* at 129 Cal. App. 4th 841), *review dismissed and remanded by* 56 Cal. Rptr. 7 3d 474 (Cal. 2007). The state law will be deemed to have a substantial effect on the risk pooling 8 arrangement when the law expands the possible number of providers from whom an insured may 9 receive service and alters the scope of the bargaining relationship between the insurer and the 10 insured. *See Miller*, 538 U.S. at 338.

11 With regards to § 514(a) preemption, the Plaintiff does not expressly contend that the UCL 12 claim does not "relate to" the ERISA Plan, but rather that the claim falls under the "saving clause," 13 asserting that the Knox-Keane Act regulates insurance. (Pl.'s Opp'n at 17:1-2.) "Subdivision (b) 14 of section 1371.4 was enacted in 1994 to impose a mandatory duty upon health care plans to 15 reimburse noncontracting providers for emergency medical services." *Prospect Med. Grp. v.* 16 *Northridge Emergency Med. Grp.*, 45 Cal. 4th 497, 504 (2009). Under the first prong of the *Miller* 17 test insurers must comply with the Knox-Keane Act in order to do business in California, therefore 18 the first prong—whether the state law is "specifically directed toward" the insurance industry—is 19 satisfied. The second prong is also satisfied because section 1371.4(b) dictates when the insurer 20 must pay for risk it has assumed, specifically the risk that the insured may require emergency 21 medical services. For these reasons, the Court finds that even if the UCL claim relates to the 22 ERISA Plan, it is nevertheless saved from preemption because section 1371.4(b) of the Knox-23 Keane Act regulates insurance.

24 **2. § 502(a) Preemption**

25 Even if a cause of action is deemed to "regulate insurance," it will be preempted under § 26 502(a) "if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, 27 ERISA's remedial scheme." *Davila*, 542 U.S. at 217; *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 28 1222, 1227 (9th Cir. 2005). Section 502(a) contains a comprehensive and exclusive scheme of

civil remedies to enforce ERISA's provisions. *See* 29 U.S.C. § 1132(a); *see also Davila*, 542 U.S. at 216 (stating "Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim."). For example, § 502(a)(3)'s term "'equitable relief'. . . refer[s] to those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 256 (1993). Simply put, "if an individual . . . could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210. In determining whether the Plaintiff's cause of action falls within the scope of ERISA § 502(a), the Court must "examine [Plaintiff's] complaints, the statute on which their claims are based ([Knox-Keane Act]), and the various plan documents." *Id.* at 211.

According to Plaintiff, the balance billing claim could not have been brought under ERISA, and raises a separate legal duty—a duty to keep plan members out of the billing process by paying non-contracting emergency physicians a "customary and reasonable rate." (Pl.'s Opp'n at 14:17-22.) Furthermore, Plaintiff asserts that the injunctive relief sought to stop the process in which CareFirst administers its plans does not trigger a duty under ERISA or the Plan's specific terms. (Pl.'s Opp'n at 14:1-2.) Plaintiff contends that the balance billing issue is separate and independent from an improper denial of benefits claim. (Pl.'s Opp'n at 14:17-22.)

CareFirst relies on the *Cleghorn*, *Sarkisyan* and *Cohen*, but Plaintiff successfully distinguishes the three cases. (Def.'s Mot. to Dismiss 7-9.) In all three cases, the courts found that the UCL claims were essentially improper denial of benefits claims, which could have been brought within ERISA's remedial scheme, and were therefore preempted. *See Cleghorn*, 408 F.3d at 1226 ("The only factual basis for relief pleaded in Cleghorn's complaint is the refusal of Blue Shield to reimburse him for medical care he received."); *Sarkisyan*, 613 F. Supp. 2d at 1205-1206 ("ERISA plainly preempts Plaintiffs' claims to the extent that Plaintiffs seek redress for what they claim to be CIGNA's wrongful denial of benefits . . . ."); *Cohen*, 29 Cal. Rptr. 3d at 54 ("Cohen's

claims amount to an assertion of wrongful denial of benefits under the terms of his ERISA-regulated [plan] . . . .").

CareFirst further asserts that an injunction remedy is available under ERISA, and because it is available under ERISA, the UCL claim conflicts with the remedial scheme and should be preempted. (Def's Reply 7:14-17.) CareFirst cites *Standard Ins. Co. v. Morrison*, which found that: "[Plaintiff] may also seek an injunction or other appropriate equitable relief to enforce the provisions of ERISA or of the plan." 584 F.3d 837, 845-846 (9th Cir. 2009). Here, however, under his UCL claim, the Plaintiff is not seeking to enforce any provisions of ERISA or any terms within the Plan. To the contrary, Plaintiff brings a separate, ERISA cause of action seeking to enforce the terms of the Plan. Plaintiff's UCL claim does not concern denial of benefits under ERISA provisions or the Plan itself, rather the state law claim seeks to enjoin CareFirst from continuing its practice that put plan members into billing disputes with emergency physicians.

Since Plaintiff's UCL claim falls within the savings clause and since the UCL claim presents an independent legal duty separate from those addressed by ERISA's remedial scheme in § 502(a), Plaintiff's UCL claim is not preempted under § 514(a) or § 502(a).

**C. Plaintiff's UCL Claim**

Under the Knox-Keane Act, emergency room physicians must resolve billing disputes with a health care service plan which, under the regulations of the California Department of Managed Health Care, have a duty to pay a "reasonable and customary amount" for emergency services rendered by non-contracting or out-of-network, emergency room doctors.[1] Cal. Health & Saf. Code § 1371.4; Cal.Code Regs., tit. 28, § 1300.71, subd. (a)(3)(B); *see Prospect*, 45 Cal. 4th at 505. In *Prospect*, the California Supreme Court addressed the question of whether balance billing patients is permissible under the Knox-Keane Act; more specifically, whether non-contracting emergency room doctors may directly bill plan members for the difference between the bill submitted to the health care service plan and the payment received from the plan. *Prospect*, 45 Cal. 4th at 502. The Court concluded that the practice of balance billing is not permitted, and

---

[1] "The Knox-Keane Act is a comprehensive system of licensing and regulation under the jurisdiction of the Department of Managed Health Care." *Bell v. Blue Cross of Cal.*, 131 Cal. App. 4th 211, 215 (2005).

"billing disputes over emergency medical care must be resolved solely between the emergency room doctors, who are entitled to a reasonable payment for their services, and the [health care service plan], which is obligated to make that payment." *Id.*

In reaching its decision in *Prospect*, the California Supreme Court analyzed the legislative intent behind the Knox-Keane Act, specifically the legislature's intent to "not involve the patient in the payment process at all." *Id.* at 509. Section 1317(d) requires emergency room physicians to render emergency medical care regardless of the patient's ability to pay. Cal. Health & Saf. Code § 1317(d). The section also provides that "the patient . . . shall execute an agreement to pay or otherwise supply insurance or credit information promptly after the services are rendered." *Id.* According to the court in *Prospect*, section 1317(d) implies that once a plan member provides his insurance information, he has fulfilled his obligation towards the emergency physicians. 45 Cal. 4th at 506. Furthermore, section 1342(d) expresses a legislative intent to "[help] to ensure the best possible health care for the public at the lowest possible cost by transferring the financial risk of health care from patients to providers." Cal. Health & Saf. Code § 1342(d). Both section 1317(d) and 1342(d) address the legislature's intent to protect plan members from being injected into billing disputes for emergency medical care: "we perceive a clear legislative policy not to place patients in the middle of billing disputes between doctors and [health care service plans]." *Prospect*, 45 Cal. 4th at 507.

Here, Plaintiff argues that although CareFirst did not actually bill Plaintiff, CareFirst was a "necessary party to the series of events that permitted the balance billing," and is therefore liable under the Knox-Keane Act. (Pl.'s Opp'n at 9:4-6.) Plaintiff asserts CareFirst's handling of the claim "necessarily leads to the injection of patients . . . into billing matters," thus violating the Knox-Keane Act. (Pl.'s Opp'n at 10:4-5.) More specifically, Plaintiff argues that CareFirst fell short of its independent obligation to pay Emergency Physicians Associates a "reasonable and customary amount" for services rendered to Plaintiff. (Pl.'s Opp'n at 9:6-8.) In its Reply, CareFirst argues the UCL claim for balance billing is misplaced and inapplicable to CareFirst, emphasizing a portion of the *Prospect* holding: "[e]mergency room doctors may not bill the patient for the disputed amount." 45 Cal. 4th at 502.

1         The duty to pay a "reasonable and customary amount" is owed by the health care insurer, here CareFirst, to the non-contracting emergency room physicians, here Emergency Physicians Associates, not to the plan member, Plaintiff. Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3)(B); *Prospect*, 45 Cal. 4th at 505. Consequently, if Emergency Physicians Associates decided the amount paid to them was not "reasonable and customary" their relief lies in bringing suit against the insurer, CareFirst. *Prospect*, 45 Cal. 4th at 507-508 ("doctors may directly sue HMO's to resolving billing disputes in order to *avoid* the necessity of balance billing"). However, this chain of duties does not change the fact that "under the Knox-Keane Act, [plan members] are *not* liable to pay for emergency care." *Id*. at 510.

        In contrast to the holding in *Prospect*, CareFirst's Plan and the execution of the Plan both incorporate the plan member into the billing process. Under CareFirst's Plan, plan members "may be responsible for amounts in excess of the Plan Allowance for [emergency medical services]." (Compl. ¶ 24.) Furthermore, CareFirst stated in the Explanation of Benefits to the Plaintiff that "[i]t is the member's responsibility to pay the provider for [emergency medical services over our Plan Allowance]." (Compl. ¶ 34.) Plaintiff brings his Knox-Keane Act claim under the UCL, which characterizes "any unlawful, unfair or fraudulent business act or practice" as "unfair competition." Cal. Bus. & Prof. Code § 17200. The UCL statute's coverage is expansive, including "anything that can properly be called a business practice and that at the same time is forbidden by law." *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 113 (1972); *Kilgore v. KeyBank*, 712 F. Supp. 2d 939, 947 (N.D. Cal. 2010); *see also Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 676 (2009) ("Violations of federal as well as state and local law may serve as the predicate for an unlawful practice claim under" the California UCL.). Considering the above, Plaintiff's allegations adequately state a claim for relief under the UCL for allegedly violating the Knox-Keane Act by placing patients in the middle of billing disputes between emergency physicians and health care service plans. *See Prospect*, 45 Cal. 4th at 507.

        Lastly, CareFirst asserts in its Reply that the Court should dismiss Plaintiff's UCL claim because Plaintiff "attempt[ed] to replead his UCL claim against CareFirst in his Opposition." (Def.'s Reply 5:15-16.) The Court disagrees. A complaint is sufficient if it gives the defendant

1  "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at
2  555. More generally, the Federal Rules are designed to minimize technical disputes over
3  pleadings. *Iqbal*, 129 S.Ct. at 1950. Here, Plaintiff adequately states a cognizable claim for relief
4  under the Knox-Keane Act: "Defendants' conduct also undermines or violates the policies
5  embodied in the Knox-Keane Act—one of which is to prevent the placement of patients in the
6  middle of billing disputes between doctors and health care service plans—thus providing a
7  sufficient predicate for Plaintiff's claim for unfair business practices." (Compl. ¶ 53.) Plaintiff's
8  Complaint provides adequate notice to CareFirst that Plaintiff pleads a cause of action under UCL
9  for "violat[ing] the policies embodied in the Knox-Keane Act." (Compl. ¶ 53.)

10  In light of the analysis above, the early stages of this case, and the Court's obligation to
11  determine the motion in the light most favorable to the pleading party, CareFirst's motion to
12  dismiss the UCL claim is **DENIED**.

13  **D. Motion to Strike Class Allegations**

14  Here, CareFirst challenged Plantiff's class allegations as being "improper" based on
15  *Norwest Mortgage, Inc. v. Superior Court*. 72 Cal. App. 4th 214 (1999) (holding against
16  nationwide class certification under the UCL for claims of non-Californian residents, for injuries
17  arising outside of California; stating "[California] [l]egislature did not intend the statutes of this
18  state to have force or operation beyond the boundaries of the state."). In response to CareFirst's
19  Motion, Plaintiff proposed alternative allegations, or clarifications, in his Opposition: "(1) a
20  nationwide ERISA class of CareFirst enrollees based on a denial of benefits, and (2) a UCL
21  subclass consisting of California residents who, during the relevant period, were CareFirst
22  enrollees and were billed for the balance owing for emergency room services rendered by
23  Emergency Physicians Associates." (Pl.'s Opp'n at 18:3-6.) In its Reply, CareFirst did not find
24  this clarification objectionable. Therefore, considering the early stages of the litigation, the Court
25  **GRANTS** CareFirst's Motion to Strike with leave to amend the class allegations according to the
26  clarification set out in Plaintiff's Opposition.

27  **CONCLUSION**

28  In light of the analysis above, CareFirst's Motion to Dismiss the ERISA claim is **DENIED**.

The Motion to Dismiss the UCL claim is **DENIED**. CareFirst's Motion to Strike the class allegations is **GRANTED** with leave to amend the allegations as articulated in Plaintiff's Opposition. If Plaintiff chooses to file an amended complaint, he must do so within **20 days from the date this order is filed**.

**IT IS SO ORDERED**.

DATED: December 7, 2010

Hon. Roger T. Benitez
United States District Judge